ALEXANDER OTIS MATTHEWS
REG. NO. 24394-016
FCI FORT DIX-WEST
P.O. BOX 2000, UNIT 5803
FORT DIX, NJ 08640
PRO SE DEFENDANT



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v. )<br>)<br>ALEXANDER OTIS MATTHEWS. )<br>)<br>)<br>)<br>)<br>_____ ) | MOTION TO VACATE, SET ASIDE<br>OR CORRECT SENTENCE PURSUANT<br>TO 28 U.S.C §2255<br><br>SAT BELOW:<br>HON. LIAM O'GRADY, U.S.D.J.<br>CRIMINAL NO. 1:11-cr-00348-LO-1 |

Alexander Otis Matthews, Prison Registration Number 24394016, presently confined at the Federal Correctional Institution, Fort Dix, New Jersey, by way of motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. §2255 says:

1. The sentence under attack in this motion was entered in the United States District Court for the Eastern District of Virginia, by the Honorable Liam O'Grady, U.S.D.J.

2. The sentence imposed was 120 months in prison.

3. The date of sentencing was September 30th, 2011.

4. Mr. Matthews was charged with one count of wire fraud [Count 1], and one count of bank fraud [Count 2]; and eventually pled guilty to those charges before this Court on July 15th, 2011.

5. This matter ended in the Eastern District of Virginia however one of the cases comprising this case, and the first of the two Mr. Matthews was indicted and arrested for, was initiated

in the U.S. District Court of Maryland in Greenbelt Maryland. This was the case for which Mr. Matthews was charged with Bank Fraud, and the subject property of this case was 12995 Wyckland Drive, Clifton, Virginia 20124.

6. The 12995 Wyckland Drive case was filed in Maryland because the bank that gave the loan in question was chartered in Maryland , thus establishing Maryland for jurisdiction.

7. At that stage in the Maryland investigation Matthews was represented by attorney James T. Zelloe.

8. James T. Zelloe , 11350 Random Hills Road, Suite 700, Fairfax, Virginia 22030, represented Mr. Matthews at his initial appearance and arraignment, and all the way up to Mr. Matthews' bail revocation hearing on or about December 22nd, 2011. Due to a conflict of interest raised by U.S. Attorney Michael Pauze, and with Mr. Matthews' consent, Attorney Zelloe withdrew his representation of Mr. Matthews at the start of that bail revocation hearing.

9. Presiding U.S. Magistrate Judge Charles Day then provided Mr. Matthews court appointed counsel in the person of attorney Timothy Sullivan to represent Mr. Matthews in the matter.

10. When Mr. Matthews was later indicted in the Eastern District of Virginia for wire fraud, he was given court appointed counsel in the person of U.S. Public Defender Todd Watson, and U.S. Public Defender Gul Raza Gharbieh. Glen F. Ivey and Lauren Duff Eade of Venable P.C. later joined the defense team in that case.

11. Both cases against Mr. Matthews were eventually consolidated in the Eastern District of Virginia , with the

Maryland case being transferred over via a Rule 20 motion. After pleading guilty to both cases, Mr. Matthews the hired attorney Joan Robin to represent him through the sentencing phase and relinquished all his other counsel.

12. Other than the proceedings referred to above, Mr. Matthews has not previously filed any petitions, applications or motions with respect to his sentence in any Federal Court, and no petition or appeal is now pending in any court.

13. No petition or appeal is currently pending as to the sentence under attack.

14. All grounds not previously raised are initially cognizable on habeas review.

15. When Mr. Matthews completes his sentence related to the sentence under attack, he does not have any other sentence to complete.

16. This petition is timely filed.

17. The basis for Mr. Matthews' petition is outlined below.

GROUND ONE: PETITIONER WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL, GUARANTEED HIM BY THE SIXTH AMENDMENT ,BECAUSE HIS ATTORNEY FAILED TO ADVISE HIM DURING THE PRE-TRIAL PHASE, FAILED TO ADVISE HIM OF HIS SENTENCE EXPOSURE, FAILED TO ADVISE HIM DURING PLEA NEGOTIATION STAGE, AND FAILED TO CONDUCT A THOROUGH INVESTIGATION OF THE CASE.

MR. Matthews was never given advice by Counsel Zelloe in the pre-trial stage of this case. Attorney Zelloe never reviewed any of the Government's evidence against him with Mr. Matthews. Mr. Zelloe never showed Mr. Matthews a federal sentencing guideline range computation, never told or advised him of the risk he stood in going to trial as opposed to entering a plea bargain, and never reviewed with Mr. Matthews the strengths and weaknesses of the government's case against him. Mr. Zelloe never

filed a motion to have the Government's evidence turned over so that he could conduct a thorough investigation of the matter and then be able to properly advise Mr. Matthews as to his true risk in going to trial as opposed to taking a plea bargain from the government. Outside of this matter , Mr. Zelloe had represented Mr. Matthews in the government's other investigation of him in the Eastern District of Virginia. Mr. Zelloe had met with the FBI agent on the case, an Agent John Cotter, who told Mr. Zelloe of his desire to prosecute Mr. Matthews and of his knowledge of various transactions Matthews was involved in . Mr. Zelloe also was Mr. Matthews' general counsel and so was aware of the various properties Mr. Matthews had dealings with. Thus, in spite of being aware of Mr. Matthews considerable exposure , he never advised Mr. Matthews of the risks he stood in going to trial and not pleading guilty. When Mr. Matthews asked Mr. Zelloe about the government's evidence against him, Mr. Zelloe told him that the U.S. Attorney had not provided it to him . Through the entire case all the way up through the indictment and arraignment Mr. Zelloe never obtained or reviewed the government's evidence other than getting a copy of the original criminal complaint and then the actual indictment. Without the benefit of reviewing what the government had against in the form of government evidence and witness information in the form of FBI 302 evidence, Mr. Matthews was not provided a reasonable means by which to make an informed decision as to plead guilty or go to trial.

A week after his arrest, at a critical point in the case, U.S. Attorney at the time Michael Pauze invited Mr. Zelloe to bring Mr. Matthews to his office to meet with him and the FBI to

- 4 -

discuss Mr. Matthews entering a guilty plea and engaging in plea negotiations. Given the insufficient information he had at the time Mr. Matthews declined to attend the meeting, which was attended by Mr. Zelloe without him. Mr. Zelloe called Mr. Matthews after the meeting, saying it was a very brief meeting and that he told the U.S. attorney that his client was innocent of the charges and not interested in pursuing a plea deal. He never offered any advice or counsel as to whether Mr. Matthews should consider what the terms of the government's plea offer consisted of. He also never suggested to Mr. Matthews that he had a viable defense or defenses as to the charges against him and what that defense consisted of.

Subsequent to the meeting , Mr. Zelloe never relayed to Mr. Matthews the general or specific terms of what the Government had offered or intended to offer. Mr. Zelloe never advised Mr. Matthews that in federal cases generally the earlier the plea is accepted the better for the defendant, or told him of the minumum and maximum sentence range he faced going to trial. Mr. Zelloe never advised Mr. Matthews that in going to trial he faced the possibility of having his sentenced enhanced , and never told Mr. Matthews of his opinion or advice concerning the chances Mr. Matthews stood of being acquitted. Mr. Zelloe never interviewed or investigated any of the witnesses the government had in the case . Mr. Matthews later found out that the government did in fact have a considerable amount of evidence pointing to his guilt as well as a voluminous amount of 404B evidence against him, but at this critical juncture in the case Mr. Matthews was not provided by his attorney both the actual evidence and his attorney's critical advise as to how strong the evidence against him

- 5 -

was.

At that point in the case, if Mr. Matthews had entered a guilty plea he had a loss to the lender of $200,000.00 USD. Arguably, there was also a loss to a second trust lender of $300,000.00 USD which would have been a total estimated loss of $500,000.00. At that point the investigation had not been expanded to include the other matters that it eventually included. Without the additional enhancements, charges, and subsequent increase in guideline sentence range that were caused by Mr. Matthews not being properly advised of his real exposure, a guilty plea at that stage would have resulted in a sentence of approximately 75-80 % of the 10 year sentence Mr. Matthews ultimately received. But for the lack of proper investigation and advice from his attorney Mr. Matthews would have accepted the government's offer to plead guilty.

In looking at insufficient assistance of attorney cases, the accepted standard and the standard in the Fourth Circuit is that of <u>Strickland v. Washington</u>. <u>Strickland</u> uses the ABA standard's as a guide to what is reasonable in terms of attorney performance .<u>Strickland</u>,466 U.S. at 688. Under ABA Criminal Justice Standards /Code of Professional Conduct 4,4.1 Duty to Investigate, 4,5.1 Advising the Accused, 4,6.2 Plea Discussions , and 4,5.2 Control and direction of the case, Mr. Zelloe's representation in this case was objectively unreasonable under the <u>Strickland</u> standard and constitutionally deficient.

In this Fourth Circuit, in the Eastern District, Senior Judge T.S. Ellis 111 has said " It is well settled that "[a] criminal defendant has a right to effective assistance of counsel in deciding whether to accept or reject a proposed plea agreement" (citing Toro v. Fairman, 940 F .2d 1065,1067 (7th Cir. 1991). Indeed, "the decision whether to plead guilty or

contest a criminal charge is ordinarily the most important single decision in a criminal case and counsel may and must give the client the benefit of counsel's professional advice on this crucial decision"[722 F. Supp 2d 688] citing <u>U.S. v. Gordon</u>, 156 F ,3d 376,380 (2d Cir. 1998)" <u>Wolford v. U.S.</u>, 722 F. Supp 2d 664: 2010 U.S. Dist. Court Lexis 66941 (4th Cir. 2010). Without thoroughly investigating the case and reviewing the evidence there was no reasonable means by which Mr. Zelloe could render advice in a reasonable manner, and thus no way for Mr. Matthews to make an informed decision as to his exposure in the case. But for the lack of being properly advised about his exposure in light of the two investigations, and lack of being advised about his risks in going to trial and the time he faced with the role of relevant conduct and enhancements, Mr. Matthews would have accepted the plea offer from the government or entered a plea of his own volition since it was in his best interest. Petitioner's sentence must be vacated, set aside, or corrected.

<u>GROUND TWO</u>:   PETITIONER WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL, GUARANTEED HIM BY THE SIXTH AMENDMENT, BECAUSE HIS ATTORNEY FAILED IN HIS DUTY TO EXPLORE DISPOSITION WITHOUT TRIAL.

Mr. Matthews was never advised of his true exposure in going to trial in this case, and the evidence was never reviewed with him. If Mr. Zelloe had properly advised Mr. Matthews of the evidence, there were several options that Mr.Zelloe was obligated to explore as alternatives to going to trial. Again, <u>Strickland</u> refers the matter to the ABA Model Guidelines and the following alternatives to trial are listed as options that must be explored in trying to best represent one's client :

1. entering a conditioned plea that allows certain issues to be litigated which affect the validity of a conviction.
2. to possibly not proceed to trial on the merits of the charges.
3. possible dismissal of one or more charges immediately or upon completing a deferred prosecution agreement.

- 7 -

4. to possibly decline from asserting or litigating certain pre-trial motions.
5. the possibility of assisting the government at that early stage in prosecuting or investigating the present case for other alleged criminal activity.
6. cessation of investigation and immunity from further prosecution for uncharged alleged criminal conduct.
7. client receiving , with the courts permission, a specified sentence or sanction or a sentence or sanction within a specified range.
8. the prosecution not taking or taking at the time of sentencing a specified position with respect to the sanction to be imposed by the court.
9. the full range of pleas available to a client when entering into plea negotiations.

If Mr. Matthews had been properly advised to his true exposure at that point in the case, and been advised as to the tremendous amount of evidence the government had compiled , he would have pled guilty and entered into a plea agreement.

In the only other federal criminal case Mr. Matthews has been involved in, and a fitting example for this argument, at the critical juncture of evaluating the government evidence and deciding whether to plead guilty or not, Mr. Matthews in fact totally relied on his attorney's advice. In that case , Mr. Matthews' attorney went to meet the U.S. Attorney and FBI , and after talking with them and evaluating the evidence, he did what he was obligated to do as an attorney seeking his client's best interest and immediately had Mr. Matthews enter into a plea agreement. Mr. Matthews did exactly what he was told by his attorney who he relied on totally and he entered into a plea agreement. Next, Mr. Matthews' attorney told him that the next thing to do to get the most favorable deal was to agree to fully and thoroughly cooperate to the fullest extent to assist the government in the investigation. Again, Mr. Matthews did just what he was told , and for the next few years spent many , many hours and many weeks at a time assisting the FBI. For following his attorney's advice, his critical advice in trying to obtain a favorable disposition without trial, by putting

his full energy into assisting the Government, and under the mercy of the Judge in the case, Mr. Matthews under guidance by his attorney and his cooperation was rewarded and he was spared jail time. At his sentencing hearing on the case this motion is about , it was implied that Mr. Matthews had somehow escaped justice in that previous matter when in fact Mr. Matthews followed his attorney's advice to the letter, fully cooperated with the government, and was rewarded for it. His attorney then explained thats how our system works. In a federal criminal case a person is faced with decisions that are in most cases the most important they have ever faced. The stakes are too high and the experience too gut wrenching for a criminal defendant to make such a decision without an attorney to both explain and then advise him how to best proceed. As we saw in the start of this discussion and as the case involving Mr. Matthews first criminal case shows, there are many viable alternatives to trial that can work well. Properly advised to his true exposure, Mr. Matthews would have entered into a plea agreement with the Government in this case when it was first offered to him. Mr. Matthews is totally reliant upon his attorney's assistance and advice in criminal matters, and but for the lack of being properly advised about his exposure in of the two investigations, and lack of being advised about the risk he faced in going to trial in this matter and the time he faced with the role of relevant conduct and enhancements, Mr. Matthews would have accepted the plea offer from the government or entered his own. Matthews' sentence must be vacated, set aside or corrected.

GROUND THREE: PETITIONER WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL, GUARANTEED HIM BY THE SIXTH AMENDMENT, BECAUSE OF HIS ATTORNEY'S CONFLICT OF INTEREST IN THE CASE.

Early in this case U.S. Attorney Michael Pauze had an objection to Mr. Matthews being represented by Mr. Zelloe due to a meeting early in the case where it was inferred by the Government that Mr. Zelloe also represented another defendant in the case, Farnoush Ahramizadeh. Ms. Ahramizadeh became a cooperating witness against Mr. Matthews in the case , but had been present at another meeting regarding the case in which Mr. Matthews, Mr. Zelloe, and Ms. Ahramizadeh all attended. Also, in the start of the case Mr. Zelloe had met with the FBI regarding Ms. Ahramizadeh , before Mr. Matthews was charged in the case. The Government was not comfortable with Mr. Zelloe's representation of Mr. Matthews , and made it known early own . Mr. Zelloe continued in his representation of Mr. Matthews, and the U.S. Attorney kept asking that he withdraw due to the conflict.

Finally, at a hearing in which the Government sought to revoke Mr. Matthews' bail, related to allegations put forth by Ms. Ahramizadeh, the matter came to a head and before a formal conflict was filed, Mr. Zelloe submitted his withdrawal from the case with Mr. Matthews' consent. The Magistrate Judge Charles Day then appointed Timothy Sullivan to represent Mr. Matthews, but since he was new to the case the hearing was continued and Mr. Matthews was later placed on home confinement. The confusion caused by the conflict and having to get new counsel weakened Mr. Matthews defense, and Mr. Matthews feels that the Government sought to have him in the weakened and vulnerable position of having no counsel or new counsel at this very important hearing where the Government sought to take Mr. Matthews' freedom.

This conflict should have been settled at some other time than in an unexpected and unnanounced way in the midst of a hearing where the Government sought to take Mr. Matthews' freedom. The Government sought to proceed on the matter anyway, it was only the action of Magistrate Judge Charles Day that allowed Mr. Matthews both counsel appointed by the Court and a continuance that saved Mr. Matthews from proceeding in that hearing without representation. This conflict issue ended up leaving Mr. Matthews almost without counsel in the most important hearing he had ever been in, namely one where his very freedom was at stake. The fact that Mr. Matthews was not even told that his counsel would be denied him until he walked in the courtroom that day on such a hearing is a mockery of justice and a travesty by itself. This confusion weakened Mr. Matthews' defense by causing him to start with a new attorney and ultimately lose the hearing and this conflict should'nt have been resolved at such a hearing where a defendant's freedom is at stake. Defense counsel's conflict in this case led to his withdrawal at a critical point which prejudiced Mr. Matthews' defense.

Petitioner's sentence must be vacated, set aside, or corrected.

GROUND FOUR: PETITIONER WAS DENIED THE EFFECTIVE ASSISTANCE COUNSEL, GUARANTEED BY THE SIXTH AMENDMENT, BECAUSE OF THE CUMULATIVE ERRORS OF HIS ATTORNEY.

Petitioner restates and realleges the facts in GROUNDS ONE through THREE above as though fully set forth herein.

Considered in the aggregate, the cumulative harm to Petitioner is significant as described above. There is reasonable probability that the cumulative errors affected the outcome of the proceedings, and that resulting prejudice to

Petitioner is overwhelming as it resulted in his untimely and last minute guilty plea and enhanced sentence. Counsel's ineffectiveness requires that Petitioner's sentence be vacated, set aside, or corrected.

## CONCLUSION

In light of the above, and his accompanying Affidavit, Petitioner's sentence must be vacated, set aside, or corrected.

WHEREFORE, Petitioner prays that the Court grant him all the relief to which he might be entitled.

I certify under penalty of perjury that the foregoing is true and correct.

DATE: <u>January 22, 2012</u>          _____
                                        Alexander Otis Matthews